**IN THE COURT OF APPEALS OF IOWA**

No. 15-1508
Filed March 9, 2016

**IN THE INTEREST OF A.D.,**
**Minor Child,**

**S.L., Mother,**
Appellant.
_____

Appeal from the Iowa District Court for Warren County, Mark F. Schlenker, District Associate Judge.

A mother appeals the termination of her parental rights to her one-year-old daughter. **AFFIRMED.**

Chira Corwin of Corwin Law Firm L.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

M. Kathryn Miller of the Des Moines Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

A.D. tested positive for methamphetamine at birth. She was removed from her mother's care before leaving the hospital in November 2014 and has been in foster care since. Citing the mother's lack of significant efforts to resolve her drug addiction, the juvenile court granted the State's petition to terminate parental rights in August 2015.

The mother asks for six more months to work toward reunification, disagreeing with the juvenile court's conclusion that termination was in A.D.'s best interests and was "less detrimental than the harm that would be caused by continuing the parent-child relationship." The mother also contends the Iowa Department of Human Services (DHS) did not make reasonable efforts to assist her with budgeting and transportation issues.

After reviewing the entire record anew,[1] we find an extension of time was not warranted, and no clear and convincing evidence existed to support the mother's position that termination would be detrimental to A.D. because of their close bond. In addition, the mother did not preserve her claim regarding reasonable efforts. Accordingly, we affirm the termination order.

The mother was twenty-three-years old when she gave birth to A.D.[2] Both A.D.'s mother and father[3] admitted using methamphetamine. The mother's addiction started two years earlier and progressed to daily use during her

---

[1] We review termination proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.*

[2] The mother has two older children who are not part of this appeal but also are not in her custody.

[3] The juvenile court also terminated the father's parental rights, but he is not a party to this appeal.

pregnancy. The parents consented to DHS removal of the baby in early November 2014. The juvenile court adjudicated A.D. as a child in need of assistance on December 22, 2014. The mother did not communicate with the DHS during late December 2014 or early January 2015. The juvenile court issued a disposition order on February 6, 2015, requiring the mother receive mental health and substance abuse evaluations, follow the evaluators' recommendations, and submit to random drug tests.

The mother's substance abuse evaluation recommended treatment, but she did not complete treatment. In fact, the mother told the DHS case worker that she was attending substance abuse treatment for three months in early 2015, but she was not. The mother was recommended for family recovery court, but opted not to participate. She missed random drug tests or completed them several days late. The mother did not undergo a mental health evaluation as required by the disposition order.

The mother participated in visitation with A.D.—at first one two-hour session per week and eventually two two-hour sessions per week. The Family Safety Risk and Permanency (FSRP) worker brought the baby to the parents' residence. Although the sessions were scheduled for the afternoon, the FSRP worker repeatedly found the parents were not awake or prepared when she arrived with A.D. The mother attributed her difficulty in waking to issues with depression. Otherwise, the mother interacted well with A.D. during the visits and the FSRP worker believed they were developing a bond. The mother missed A.D.'s doctor appointments, blaming her absence on transportation problems. The mother did not have a driver's license or employment.

On May 6, 2015, the State filed a petition to terminate parental rights. The court held a two-day hearing in June and July 2015. The mother failed to appear for the second day of the hearing, resulting in a continuance. On August 29, 2015, the juvenile court issued an order terminating the mother's parental rights under Iowa Code section 232.116(1)(h) and (*l*) (2015). The mother appeals.

On appeal, the mother does not challenge the statutory grounds for termination. In the absence of a challenge, the grounds for termination remain undisturbed. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Rather than challenging the grounds for termination, the mother seeks an additional six months under Iowa Code section 232.104(2)(b).[4]

The juvenile court found "it is unlikely that the continued offer of services and an additional period of time to utilize those services will rectify the concerns that brought this family to the attention of the Court." We agree with that finding. The mother's drug addiction during her pregnancy resulted in A.D. testing positive for methamphetamine at birth. Yet, the mother did not follow through with drug treatment after the removal of her child. In fact, for several months she lied to the DHS about attending treatment. The mother asserted she had "changed" during the course of the CINA case, but her only evidence in support of that assertion was an appointment she had scheduled to start out-patient

---

[4] Section 232.104(2)(b) reads in relevant part:
> [T]o continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

substance abuse treatment the day after the termination hearing. She also did not follow through with mental health treatment.

Iowa courts look skeptically at "last-minute" attempts to address longstanding issues, finding them inadequate to preclude termination of parental rights. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Here, the mother did not act until after the eleventh hour. As the juvenile court determined, continued placement for six months was not appropriate because the record did not show the need for removal would have been resolved at the end of the extension. *See In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

The mother next takes issue with the juvenile court's conclusion that termination would be "less detrimental than the harm that would be caused by continuing the parent-child relationship." We read this argument as invoking Iowa Code section 232.116(3)(c), which allows the juvenile court to forego terminating parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." But the factors in section 232.116(3) are permissive, not mandatory. *A.M.*, 843 N.W.2d at 113. The evidence here supports the juvenile court's finding that termination of the mother's rights would not work to A.D.'s detriment. We specifically consider A.D.'s tender age, as well as the mother's active drug use during pregnancy and her lack of interest in addressing her addiction during the CINA case. The child was removed three days after birth and has not been returned to her mother's care. The bond between A.D. and the mother that developed during their visits does not outweigh the benefits of A.D. moving toward a permanent, stable home. *See id.*

(noting A.M. [like A.D.] had never been in the full-time care of her parents, having been removed from their custody before she ever left the hospital).

Lastly, the mother claims the DHS failed to provide reasonable efforts in "assisting her with budgeting, financial management, transportation, and financial assistance."[5]  A parent is required to inform the juvenile court if she believes services have not been adequate.  *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).  In a disposition order filed on February 6, 2015, the juvenile court found the DHS made reasonable efforts at reunifying the family.  The mother did not contest that finding or mount any other reasonable-efforts challenge before the termination hearing.  Accordingly, we decline to consider the argument in this termination appeal.  *See In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015); *see also In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (noting that while the State has an obligation to make reasonable efforts to preserve the family, it is a parent's responsibility to demand other, different, or additional services).  Because the mother did not inform the juvenile court of the need for additional services before the termination hearing, she did not preserve this issue for appellate review.

**AFFIRMED.**

---

[5] Contrary to her argument on appeal, the mother testified at the termination hearing that the FSRP worker did assist the family with budgeting advice.